UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

**DANNY SPROWLES**
    Plaintiff

**v.**                                                                                                               **No. 1:11CV-00059-M**

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant

## MAGISTRATE JUDGE'S REPORT
## and RECOMMENDATION

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Charles Richard Burchett. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 8 and 11, respectively. In addition, the plaintiff has filed a motion for a remand for consideration of new and material evidence pursuant to sentence six of § 405(g), to which the Commissioner has responded in opposition (Docket Entry Nos. 9 and 10). This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on January 5, 2010, by administrative law judge (ALJ) Roger Reynolds. In support of his decision denying Title II benefits, Judge Reynolds entered the following numbered findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since January 1, 2008, the alleged onset date (20 CFR 404.1571 et seq.).  Mr. Sprowles, a truck driver, leased his truck to another company in 2007, but he did not drive the truck himself.  His earnings record shows several zero earnings years.  His spotty income was usually under $18,000, although he earned $26,581.90 in 2005; and had no income in 2006.

3. The claimant has the following severe impairments: chronic neck pain secondary to degenerative disc disease of the cervical spine from the C1-C2 level through the C6/C7 level with mild disc bulges; degenerative disc disease of the lumbosacral spine; and degenerative joint disease of the right shoulder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).  A review of the medical evidence of record shows his severe complaints are of musculoskeletal origin.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c), that is, he can lift and carry up to fifty pounds occasionally, twenty-five pounds frequently, and sit/stand/walk up to six hours each in an eight hour day.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on May 25, 1953, and was 54 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).  He is currently 56 years old, of advanced age.

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2008, through the date of this decision (20 CFR 404.1520(g)).

(Administrative Record (AR), pp. 12-18).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a <u>de minimis</u>, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a <u>prima facie</u> showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). If the evidence supports a finding that the claimant's age, education, work experience, and residual functional capacity (used to determine the claimant's maximum sustained work capability for sedentary, light, medium, heavy or very heavy work as defined by 20 C.F.R. §§ 404.1567 and 416.967) coincide with <u>all</u> the criteria of a particular rule of Appendix 2 of Subpart P, the Commissioner must decide whether the claimant is disabled in accordance with that rule. Section 200.00(a) of Appendix 2; 20 C.F.R. §§ 404.1569a(b) and 416.969a(b).

If the claimant is found to have, in addition to the exertional impairments resulting in his maximum residual strength capabilities, nonexertional limitations, e.g., mental, sensory, or skin impairments, postural or manipulative limitations, and environmental restrictions; the Commissioner may rely on the particular rule only as a "framework for decisionmaking." Section 200.00(e)(1) and (2) of Appendix 2; 20 C.F.R. §§ 404.1569a(d) and 416.969a(d); *Kimbrough v. Secretary*, 801 F.2d 794 (6th Cir., 1986). Accordingly, the focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert

reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

**Fifth-Step Framework**

This case was denied at the fifth and final step of the sequential evaluation process based upon testimony from a vocational expert (VE). However, the ALJ cited as a framework for decisionmaking, rules 203.22 and 203.15 of the so-called medical-vocational guidelines, or grid rules, contained in Appendix 2 of the regulations (AR, p. 18). These rules contemplate an individual having a maximum exertional capacity for medium work, a high school education, and no transferable jobs skills who is closely approaching advanced age and of advanced age, respectively. They direct an ultimate finding of "not disabled." The rules corresponding to rules 203.22 and 203.15 for light work are rules 202.14 and 202.06. Rule 202.14 directs a finding of "not disabled," and rule 202.06 directs a conclusion of "disabled." At the sedentary level, rules 201.15 and 201.06 indicate that a finding of "disabled" is appropriate.

Social Security Ruling (SSR) 83-10 discusses the exertional requirements of medium, light and sedentary work. With regard to medium work, SSR 83-10 states as follows:

> The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms. The considerable lifting required for the full range of medium work usually requires frequent bending-stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.)

6

Therefore, the ALJ's decision that the plaintiff was not disabled from January 1, 2008, through the date of his decision (Finding No. 11) is supported only if the substantial weight of the evidence shows that the plaintiff has the physical capacities to perform medium work as outlined above. For the reasons set forth below, we shall conclude that the evidence does not support such a finding. Accordingly, we shall recommend a remand for a new decision and further administrative proceedings.

## **The Medical Evidence**

On August 26, 2008, the plaintiff was examined at the request of the Commissioner by Mark Burns, M.D. Dr. Burns' narrative report acknowledges the following (AR, p. 267):

> Mr. Danny Sprowles is a 56-year old white gentleman with a history of arthritis for approximately six years. He states he initially began having pain in the left lower leg and eventually spread to involve the lower back, neck, and shoulders. He says that he has been on numerous anti-inflammatory medicines in the past, but continues to note worsening pain that persists through today. He continues to follow up with his primary care provider with good relief.

Dr. Burns' apparently based his findings upon range of motion testing and other personal observations inasmuch as there is no reference to any MRI or other objective clinical data.

On September 9, 2008, a disability examiner employed by the state agency disability determination service, Tiya Marshall, determined that Dr. Burns' findings "are given great weight" (AR p. 285). Ms. Marshall acknowledged that, in addition to problems of the lower extremities affecting the plaintiff's ability to stand/walk as noted by Dr. Burns, the plaintiff alleges impairments of the upper extremities resulting in difficulties with buttons, putting on pants, shaving, washing hair, etc. Nevertheless, Ms. Marshall concluded that the plaintiff has no "severe," or vocationally significant, physical impairment. Like Dr. Burns, Ms. Marshall did not mention any MRI or other objective clinical findings in support of her conclusion of no severe impairment except that she did

7

recognize that an "[x-ray] dated 08/09/07 showed mild degenerative changes in [right] shoulder" (AR, p. 285).

On November 25, 2008, the non-examining state agency program physician, Carlos Hernandez, found that "[n]o new evidence [was] submitted at reconsideration ... not-severe rationale ... dated 09/09/08 is affirmed" (AR, p. 300). In sum, the state agency's evaluators determined that, notwithstanding allegations of upper and lower extremity limitations, the plaintiff has no vocationally significant limitation in light of some range of motion observations and a right shoulder x-ray showing some mild degenerative changes.

The magistrate judge concludes that the record contains MRI and other evidence showing that the plaintiff suffers from significant impairments in addition to mild degenerative changes of the shoulder, including the following:

> *Neck:* C4-C5: Bilateral uncinate process hypertrophy is seen with a broad-based posterior disc protrusion. There is bilateral mild to moderate neural foraminal narrowing, with mild spinal stenosis.
>
> C5-C6: Bilateral uncinate process hypertrophy is seen, with a broad-based posterior disc protrusion being the most prominent in the left lateral territory. There is mild to moderate left-sided neural foraminal narrowing with at most mild right-sided neural foraminal narrowing, and mild to moderate spinal stenosis.
>
> C6-C7: There is a broad-based posterior disc protrusion, without significant stenosis.
> (AR, p. 363).
>
> *Knees:* Bilateral small Baker's cyst, right greater than left. Global thinning of the cartilage bilaterally ... consistent with osteoarthrosis.
> (AR, pp. 318-319).
>
> [Bilateral crepitus requiring three Hyalgan injections in the knees]
> (AR, p. 390).

*Hip/pelvis:* [S]acralization of the lateral elements on the right of the L5 vertebral body. This has led to a pseudoarthrosis and can be a source of chronic back and hip pain.

(AR, p. 346).

*Hands:* [C]arpal tunnel syndrome status-post right hand surgery. ... [W]eakness left hand grip.

(AR, pp. 382 and 384).

In his written decision, Judge Reynolds acknowledged some of the foregoing evidence but nevertheless opined that plaintiff can perform medium work, to-wit:

Bilateral knee magnetic resonance imagery performed on 10/06/08 was normal except for global thinning of the cartilage with no focal defects. The Louisville, Kentucky [Veteran's Administration Medical Center] magnetic resonance imagery of the cervical spine performed on 10/01/09 showed a C7 disc bulge, moderate stenosis and foraminal narrowing, diagnosed as degenerative disc disease. ... He gave a history of "failed carpal tunnel syndrome on the right, no surgery on left."

(AR, p. 14).

As for the opinion evidence, it is consistent in its lack of any finding of disability on the part of either examining, treating, or reviewing medical personnel. This is powerful evidence that the claimant is not disabled and the Administrative Law Judge gives it great weight.

(AR, p. 17).

### The ALJ's Finding That The Plaintiff Can Perform Medium Work Was Unsupported by Any Probative Medical Evidence

On one hand, the ALJ recognized the presence of significant clinical findings unknown to the state agency evaluators supporting a rejection of their ultimate finding of no severe impairment. But on the other hand, the ALJ purported to give their opinions of no severe impairment "great weight." The magistrate judge submits that the source of this tension in the ALJ's decision is that, despite protestations of giving these medical opinions great weight, in fact, the ALJ rejected all medical source opinions and inserted his own lay opinion that an individual having the plaintiff's medical profile would be able to sustained the requirements of medium work.

9

This was improper because, as a lay person, an ALJ is "simply not qualified to interpret raw medical data in functional terms" *Nguyen v. Chater*, 172 F.3d 31 (1st Cir., 1999). See also *Rohan v. Chater*, 98 F.3d 966 (7th Cir., 1996) ("ALJ's must not succumb to the temptation to play doctor and make their own independent medical findings"); *Winning v. Commissioner*, 661 F.Supp.2d 807 (N.D.Ohio) ("Although the ALJ is charged with making credibility determinations, an ALJ does not have the expertise to make medical judgments"); and *Stallwoth v. Astrue*, 2009 WL 2271336 (S.D.Ohio) ("an ALJ must not substitute his own judgment for a physician's opinion").

The magistrate judge further concludes that the ALJ's controlling vocational hypothetical in support of his fifth-step denial decision was defective for the following reasons explained by the Sixth Circuit in *Elliott v. Apfel*, 28 Fed.Appx. 420, 2002 WL 89668:

> When we review the hypotheticals posed by an ALJ to a vocational expert, we ask if evidence in the record supports the hypothetical. If at least one doctor's opinion or report would support the question, we will not conclude that the questions were erroneous. See *Hardaway v. Secretary*, 823 F.2d 922, 927-28 (6th Cir., 1987) ("[Claimant] contends that there is no evidence to support a conclusion that he can perform sedentary work. However, at least one doctor did state that [claimant] could perform sedentary work. Therefore, there is some evidence in the record to this effect. Consequently, the hypothetical questions were not erroneous.").

In this case, no doctor opined that an individual having the plaintiff's complete medical profile can perform medium work. Similarly, in *Blythe v. Astrue*, 2009 WL 425583, this court held as follows:

> [A] "hypothetical question is correct [only] if at least one doctor substantiates the information contained therein." *Godwin v. Secretary*, 1995 WL 871199 (E.D.Mich.). As indicated above, no doctor opined that the plaintiff can perform "medium" work. The ALJ's finding that the plaintiff can perform "medium" work appears to have been based solely upon the ALJ's own lay medical opinion.

10

The magistrate judge concludes that, because there is no medical source opinion in support of the ALJ's finding that the plaintiff can perform medium work, a remand for further development and evaluation of the medical evidence is required.

### Dr. Hernandez' Opinion That The Plaintiff Has No Severe Impairment Was Not Entitled to "Great Weight"

As noted above, the ALJ found that the medical opinion evidence, including Dr. Hernandez' finding of no severe impairment, was entitled to "great weight" (AR, p. 17). In light of this finding, we acknowledge that Judge Reynold's finding that the plaintiff can sustain medium work might have been proper if Dr. Hernandez' finding had been supported by substantial evidence. In that case, arguably, the ALJ might have gratuitously found that the plaintiff is limited to medium work. However, Dr. Hernandez determined that the plaintiff has no vocationally significant limitation based upon Dr. Burns' unremarkable range of motion observations and a right shoulder x-ray showing moderate degenerative changes. The record as a whole contains MRI and other evidence that the plaintiff suffers from additional impairments affecting his neck, knees, hip/pelvis, and hands. In addition, we find it troubling that, in August of 2008, Dr. Burns found that "[s]traight leg raising was 90 degrees [i.e., normal] in both the sitting and supine position bilaterally" (AR, p. 267). The plaintiff's treatment records from July of 2008, indicate that "straight-leg raising positive bilaterally at 35 to 40 degrees [with] parasthesia [i.e., sensation of tingling, pricking, or numbness] [of the] left leg" (AR, p. 259). Dr. Hernandez' finding of no severe impairment was based upon Dr. Burns' findings. The magistrate judge concludes that the finding of Drs. Burns and Hernandez of no severe impairment was insubstantial and not entitled to "great weight."

## Motion For A "Sentence Six" Remand:
## Governing Legal Standards

Pursuant to "sentence six" of 42 U.S.C. § 405(g), the court has jurisdiction to remand this case to the Commissioner for consideration of any "new evidence which is material" if "there is good cause for the failure to incorporate such evidence into the record" as of the date of the Commissioner's final decision. When the Appeals Council declines to review an ALJ's decision, the ALJ's decision becomes the Commissioner's final decision. See *Cotton v. Secretary*, 2 F.3d 692, 695 (6th Cir., 1993) and 20 C.F.R. § 404.981 ("Effect of Appeals Council's decision or denial of review"). In this case, Judge Reynold's decision became the Commissioner's final decision when the Appeals Counsel declined to review said decision (AR, pp. 1-3).

Evidence submitted by a claimant after the Commissioner's final decision may be considered by a reviewing court only for the limited purpose of determining whether to grant a motion for a "sentence six" remand. *Cline v. Commissioner*, 96 F.3d 146 (6th Cir., 1996). The party seeking a "sentence six" remand bears the burden of proving that it is proper. *Sizemore v. Secretary*, 865 F.2d 709, 711-712 (6th Cir., 1988). First, a movant must demonstrate materiality of the evidence. Evidence is material if there is a "reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence." Id. Cumulative evidence is not material. *Young v. Secretary*, 925 F.2d 146 (6th Cir., 1990). In addition, "[e]vidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt v. Secretary*, 974 F.2d 680, 685 (6th Cir., 1992). In addition, the party seeking remand must show good cause for late submission of the evidence.

12

# Motion For A "Sentence Six" Remand:
# Findings and Conclusions

The plaintiff has filed a motion for a "sentence six" remand. The new evidence in support of the motion is appended to the motion and consists primarily of the results of an MRI of the thoracic and lumbar spine from March of 2010. Among other things, the MRI revealed the following (Docket Entry No. 9-4):

> T10-T11: There is a broad-based posterior disc protrusion which is most prominent in the bilateral lateral regions, contributing to mild neural foraminal narrowing bilaterally.
>
> (page 11 of 17).
>
> Degenerative changes and disc disease are seen at multiple levels, without significant spinal stenosis. At L4-L5 there is bilateral moderate neural foraminal narrowing. At L2-L3 there is disc material touching on the left L2 nerve. ... There is a bone marrow lesion at the L4 vertebral body which could be related to a benign hemangioma ....
>
> (page 12 of 17).

The magistrate judge views this evidence in substantially the same manner that he regards the cervical MRI and other objective clinical findings discussed at pages 8 and 9 of this report. Our view is that, from the standpoint of the medical opinions of record, which opined no severe impairment and which the ALJ purported to give great weight, the evidence is new and material. The evidence shows that the plaintiff suffers from additional impairments of which the medical sources were unaware. The limiting effects of these additional impairments have not been evaluated by any acceptable medical source. We have no serious doubt that the plaintiff had some significant degree of thoracic and lumbar degenerative changes at the time of the ALJ's decision. Hence, the new evidence shows more than a subsequent deterioration or change in condition as contemplated by *Wyatt v. Secretary*, supra. The undersigned concludes that the new evidence is material.

In addition, we find that there was good cause for late submission of the evidence. The evidence was obtained in March of 2010, after the ALJ's decision in January of 2010. We acknowledge that the mere fact that the evidence in question did not exist at the time of the Commissioner's decision is not dispositive of the good cause issue. *Oliver v. Secretary*, 804 F.2d 964, 966 (6th Cir., 1986). Nevertheless, the undersigned concludes that good cause exists in this case. In *Oliver*, the evidence appears to have been developed and obtained primarily for purposes of establishing the plaintiff's disability claim. In contrast, the evidence in this case was developed in the course of continued medical treatment. See *Koulizos v. Secretary*, 1986 WL 1748 ("good cause is shown for remand if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability").

Therefore, because the plaintiff has shown materiality and good cause, a "sentence six" remand is warranted. In any event, even if the plaintiff is not entitled to a "sentence six" remand, to the extent the court agrees with us that a remand is required in this case for independent reasons pursuant to "sentence four," there is no reason apparent why, upon remand, the Commissioner should not also consider the "sentence six" evidence.

## RECOMMENDATION

The magistrate judge RECOMMENDS that the plaintiff's motion for a "sentence six" remand be GRANTED and that this matter be REMANDED to the Commissioner pursuant to sentences four and six of 42 U.S.C. § 405(g) for a new decision and further administrative proceedings, without limitation and not inconsistent with this report.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b), any party shall have a period of fourteen (14) days, including intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a)(1)(B), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within fourteen (14) days after being served with a copy of said objections. A period of three days shall be added to each fourteen (14) day period. Fed.R.Civ.P. 6(d) and 5(b)(2)(E).

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).